```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

**ALBERT BROWN**                                                    **PLAINTIFF**

VS.                                     CIVIL ACTION NO. 3:05CV109-WHB-AGN

**MISSISSIPPI DEPARTMENT OF HEALTH**                                **DEFENDANT**

### OPINION AND ORDER

This cause is before the Court on:

1) the Motion for Summary Judgment of Defendant Mississippi Department of Health (hereinafter "MDH"); and

2) the Motion of Plaintiff Albert Brown for Leave to Supplement Response to Defendant's Motion for Summary Judgment.

Having considered the Motions, Responses, Rebuttals and all attachments to each, as well as supporting and opposing authority, the Court finds that:

1) the Motion for Summary Judgment is well taken in part and should be granted in part, and that it is not well taken in part and should be denied in part; and

2) the Motion for Leave to Supplement Response to Defendant's Motion for Summary Judgment is well taken and should be granted.

### I. Factual Background and Procedural History

This cause of action arises out of alleged employment discrimination in the promotion process. Plaintiff Brown, a black

person, was employed by Defendant MDH on January 1, 1997, and continues to work for MDH to date. Brown was originally hired into the position of Data Processing-System Analyst III. Since he was hired, Brown has been promoted twice. His current position is Systems Manager I. All of the positions held by Brown relate to computerized information systems.

On April 1, 2003, a position was created within MDH called Systems Information Officer, Chief. This position is referred to by the parties as "Chief Information Officer," or simply "CIO." The CIO position involved managing information technology personnel and planning information technology projects, among other duties. The job opening was advertised in the Clarion Ledger, a local newspaper, during late May and early June of 2003. Brown submitted his application for the CIO position on May 30, 2003. Soon thereafter, he was informed that the position would not be filled because of budgetary constraints.

On August 1, 2003, Michael Scales, a white person, was hired as Director of Health Informatics. In this position, Scales supervised the Systems Coordination Department, the department in which Brown worked. On April 1, 2004, Scales was promoted to CIO. Prior to Scales assuming the CIO position, no public notice of opening was posted or published. Brown was never offered the opportunity to interview for the CIO job.

Alleging that Scales' assumption of the CIO position was the result of race discrimination, Brown filed a Charge of Discrimination with the Equal Employment Opportunity Commission on April 30, 2004.  In addition to his grievance regarding the CIO position, Brown alleged in the Charge of Discrimination that race discrimination was involved in the filling of two additional positions by white people.  Those positions were Systems Manager II, which was filled by Suzanne Wheeler, and Assistant Manager III/TIS Manager, which was filled by Keith Justin.[1]

Brown received his Notice of Right to Sue letter from the EEOC on October 18, 2004.  Thereafter, he timely filed the subject Complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi.  The Complaint was filed on January 10, 2005, and on February 16, 2005, MDH removed the case to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1331.

On February 28, 2005, Brown filed his First Amended Complaint. The claims in the First Amended Complaint are: count one, race discrimination under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII) and under 42 U.S.C. § 1983; count two, negligence for failing to award Brown an educational benchmark

---

[1]The circumstances surrounding the jobs assumed by Wheeler and Justin were not well developed in either the Complaint or the Motion for Summary Judgment.  The Court assumes that both of the positions are higher on the organizational chart and/or higher paying than the position currently held by Brown.  If this assumption is incorrect, then the Court questions whether Brown has a viable claim regarding those two employment decisions by MDH.

raise in a timely manner; and count three, punitive damages.  The discrimination claim under § 1983 has been dismissed. See Opinion and Order filed under docket entry no. 17.  Also, Brown has conceded that the negligence claim should be dismissed. See Plaintiff's Brief in Support of Response to Motion for Summary Judgment, p. 12.  Therefore, the remaining claims to be addressed herewith are Brown's Title VII race discrimination claim and his claim for punitive damages.

The subject Motion for Summary Judgment was filed on December 15, 2005, and Brown's Motion for Leave to Supplement Response to Defendant's Motion for Summary Judgment was filed on January 25, 2005.  Both of these Motions are now ripe for consideration.

## II.  Motion for Summary Judgment

**(A)  Summary Judgment Standard - Employment Discrimination Case**

The Court begins by recognizing that a claim of employment discrimination can be proven through direct evidence or circumstantial evidence.  However, proving discrimination through direct evidence is difficult in most cases. Crawford v. Formosa Plastics Corp., Louisiana, 234 F.3d 899, 902 (5th Cir. 2000)(citation omitted).  Therefore, in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth a standard by which to analyze discrimination claims based on circumstantial evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120

4

S.Ct. 2097, 147 L.Ed.2d 105 (2000)(citation omitted); Evans v. City of Houston, 246 F.3d 344, 350 (5th Cir. 2001).  This standard is known as the "McDonnell Douglas burden shifting analysis," or simply the "McDonnell Douglas analysis."

The first step in the McDonnell Douglas analysis is proof of a *prima facie* case of discrimination by the plaintiff.  The tests for proving a *prima facie* case vary slightly depending on the type of discrimination alleged.  However, each of the groups of tests is based on minor variations of the following four factors: (1) the plaintiff must be a member of a group protected by employment discrimination law of some type; (2) the plaintiff must be qualified for the employment position in question; (3) the plaintiff must have suffered an adverse employment action, i.e., the plaintiff was not hired or promoted, or the plaintiff was fired or demoted; and (4) someone outside of the plaintiff's protected class must have filled the employment position in issue. Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002)(citation omitted).  "[E]stablishment of a *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated against the employee." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004)(citation omitted).

If the plaintiff establishes a *prima facie* case of discrimination, then under McDonnell Douglas the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason"

for the employment decision in issue. Patrick, 394 F.3d at 315 (citation omitted).  This is a burden of *production* as opposed to a burden of *persuasion*, and no credibility assessment can be made at this phase. Reeves, 530 U.S. at 142 (citation omitted).  "As this is a burden of production, the employer need not prove that it was actually motivated by its proffered reason." Patrick, 394 F.3d at 315 (citation omitted).  However, "an employer must articulate a nondiscriminatory reason *with 'sufficient clarity*' to afford the employee a realistic opportunity to show that the reason is pretextual." Id. at 317 (emphasis in original)(citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  The employer's proffered reason for the employment decision may be subjective in nature, but it must be more than vague and conclusory opinions about the plaintiff. Id.

If the employer meets the burden of articulating a nondiscriminatory reason for its employment decision, then the presumption of discrimination created by plaintiff's *prima facie* case is nullified, and the inquiry becomes more fact specific. Patrick, 394 F.3d at 315 (citation omitted).  At this point, the McDonnell Douglas scheme shifts the burden back to the plaintiff to "show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a *pretext for discrimination*." Id. (emphasis added; citation omitted).

6

The Crawford court provided a guideline by which to measure whether an employer's reason for the employment decision was merely a pretext for discrimination.

> A mere scintilla of evidence of pretext does not create an issue of material fact in all cases.  As stated by the Supreme Court in Reeves, a plaintiff must present "*sufficient* evidence to find that the employer's asserted justification is false."  It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination.  Likewise, if the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent [or direct] evidence that discrimination was the real reason for the adverse employment action.  The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination.

Crawford, 234 F.3d at 902-03 (emphasis in original; internal citations omitted).  If the plaintiff creates a genuine issue of material fact on the pretext issue, then the case must proceed to trial.  Conversely, if plaintiff fails in this endeavor, then summary judgment must be granted in defendant's favor.

The ultimate question in any employment discrimination case is of course whether the plaintiff was a victim of intentional discrimination.  Reeves, 530 U.S. at 153.  Although the burdens of producing evidence shift back and forth under the McDonnell Douglas analysis, the ultimate burden of proving intentional discrimination remains with the plaintiff at all times.  Id. at 143 (citation omitted).

**(B)   Analysis - Motion for Summary Judgment**

The first step in the McDonnell Douglas burden shifting analysis is determining whether Brown can establish a *prima facie* case of discrimination.

> To establish a *prima facie* case of race discrimination involving a failure to promote claim, the plaintiff must prove that: (1) he belongs to a protected group under Title VII; (2) he applied for and was qualified for the position he sought; (3) he was not promoted to the position sought, i.e., he suffered an adverse employment action; and (4) his employer promoted an employee to the position sought by the plaintiff who was not a member of the protected class.

McFall v. Gonzales, 143 Fed.App'x 604, 607 (5th Cir. 2005)(citations omitted).

In this case, Brown is a member of a protected group, he applied for the CIO position, he was not promoted to the position, and the job was filled by Scales, a white person. The foregoing facts are not in dispute. The only possible disputed issue regarding the *prima facie* case is whether Brown was qualified for the CIO position. The Court has reviewed Brown's resume, and finds that for the purposes of summary judgment, Brown has met the burden of proving that he is qualified for the job in question. This finding does not preclude MDH from arguing the issue of job qualifications at the trial of this cause. Based on these findings, Brown has met the burden of proving his *prima facie* case.

The burden now shifts to MDH to articulate a legitimate, nondiscriminatory reason for promoting Scales, rather than Brown,

to the CIO position.  MDH contends that "Michael Scales' background and experience with developing comprehensive enterprise-wide systems made him the more qualified candidate for the CIO position. At the time, MDH was trying to improve its technology infrastructure.  Scales had accomplished a similar task during his previous employment with the Mississippi Department of Transportation...." Affidavit of Pat Klar,[2] ¶ 8, attached as Exhibit "2" to Defendant's Motion for Summary Judgment.  The Court finds that this purported reason is sufficient to satisfy the second element of the McDonnell Douglas analysis.

In the final phase of the McDonnell Douglas analysis, the burden is on Brown to show that the proffered reason of MDH for promoting Scales to the position in question was a pretext for discrimination.  As described above in section I of this Opinion, Scales was initially hired by MDH into the position of Systems Manager III, rather than the higher-level CIO position now in issue.  This scenario forms the basis of Brown's argument that the proffered reason for promoting Scales to CIO was a pretext for discrimination.  Dr. Peter Fos, the Chief Science Officer for MDH during 2003 and 2004, states in his affidavit that he recommended that "Mr. Scales be placed into the Systems Manager III position because we were not sure if Mr. Scales could perform the Chief Information Officer position at that time." Affidavit of Peter Fos,

---

[2]Klar was the Personnel Director of MDH.

¶¶ 4-5, attached as Exhibit "A" to Plaintiff's Motion for Leave to Supplement Response to Defendant's Motion for Summary Judgment.

Brown contends that the purported reason for promoting Scales to the CIO position was a pretext for discrimination because on the one hand, MDH argues that Scales had superior qualifications for the job based on his past experience, but on the other hand MDH admits that they failed to hire Scales directly into the CIO position because they were not sure if he could perform the job adequately. The Court finds Brown's argument persuasive. That is, even though Brown has set forth no direct evidence of race discrimination, a reasonable juror could draw an inference of discrimination from the divergent testimony of the two MDH supervisors regarding Scales' qualifications for the CIO job. See, Crawford, 234 F.3d at 902-03. Accordingly, Brown has met his burden to prove that the purported employment decision of MDH may have been a pretext for discrimination.

Based on the analyses and holdings presented above, the Court finds that Brown has successfully navigated the McDonnell Douglas burden shifting path. Accordingly, his Title VII race discrimination claim must proceed to trial.

MDH also seeks summary judgment on Brown's punitive damages claim, asserting that such damages are barred by statute as to a state agency. The Court agrees.

42 U.S.C. § 1981a(b)(1) states:

> A complaining party may recover punitive damages under this section against a respondent (*other than a* government, *government agency* or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

(Emphasis added); see also Googerdy v. N. C. Agric. and Technical State Univ., 386 F.Supp.2d 618, 625 (M.D. N.C. 2005)(holding that "[g]overnment agencies are immune from punitive damages under Title VII...." (citing 42 U.S.C. § 1981a(b)(1)).  Summary Judgment must be granted on Brown's punitive damages claim.

### III.  Motion for Leave to Supplement Response to Defendant's Motion for Summary Judgment

Through Plaintiff's Motion for Leave to Supplement Response to Defendant's Motion for Summary Judgment, Brown seeks to supplement his Response to include the Affidavit of Dr. Peter Fos.  MDH has filed no objection to this supplementation.  The Court therefore finds that the Motion is well taken and should be granted.

### IV.  Conclusion

To summarize the above holdings, summary judgment will be granted on the negligence claim and the punitive damages claim. Summary judgment will be denied on the claim for compensatory damages under Title VII, which will be the only claim to be tried in this cause.

Based on the holdings presented above:

11

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (docket entry no. 37) is granted in part and denied in part.  The Motion is granted to the extent that Plaintiff's negligence claim and Plaintiff's punitive damages claim are dismissed.  The Motion is denied to the extent that Plaintiff's Title VII race discrimination claim will proceed to trial.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Supplement Response to Defendant's Motion for Summary Judgment (docket entry no. 45) is hereby granted.

SO ORDERED this the 3rd day of February, 2006.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

tct